## IN THE UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF TENNESSEE
### WESTERN DIVISION

---

**CAROLYN LOVE, KIERRA LEE**
and **JANEEN ACEY,** Individually
and on behalf of themselves and other
similarly situated current and former
employees,

       Plaintiffs,

v.

      NO. _____

**GARNETT STATION PARTNERS, LLC,**
A Delaware Limited Liability Company,
**CAMBRIDGE FRANCHISE HOLDINGS, LLC,**
a Delaware Limited Liability Company,
**MIRABILE INVESTMENT CORPORATION,**
a Tennessee Corporation, and,
**RAY MEEKS**, **TIM FURR,**
**JOSEPH MIRABILE, MATT PERELMAN,**
**ALEX SLOANE**, and **CHRIS SCHNIEPP,**
Individually,

                                  FLSA Opt-In Collective Action

                                  **JURY DEMANDED**

    Defendants.

---

## COLLECTIVE ACTION COMPLAINT

---

      Plaintiffs, Carolyn Love, Kierra Lee and Janeen Acey, individually, and on behalf of themselves and all other similarly situated current and former employees classified as hourly-paid Assistant Managers and/or salaried Assistant Managers, bring this collective action against Defendants and allege as follows:

# I.    **INTRODUCTION**

1.    This lawsuit is brought against Defendants as a collective action for wage theft under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.,* to recover unpaid straight time wages and unpaid overtime compensation and other damages owed to Plaintiffs and other similarly situated current and former employees, classified as hourly-paid Assistant Managers and/or salaried Assistant Managers by Defendants and, who are members of a class as defined herein and currently or previously employed by Defendants.

2.    Plaintiffs allege that during the statutory period, Defendants classified all of their Assistant Managers as exempt and paid them a salary and that beginning in 2016 Defendants converted their Assistant Managers to non-exempt employees and paid them by the hour. Plaintiffs allege that during the exempt salaried period, Assistant Managers were misclassified as exempt and therefore entitled to unpaid overtime compensation. Plaintiffs allege that during the non-exempt hourly period, Assistant Managers worked off the clock at the direction of upper management and had their time shaved or edited in order to stay within a labor budget set by Defendants. As such Plaintiffs seek to form two (2) classes of aggrieved current and former employees as specified below.

# II.    **JURISDICTION AND VENUE**

3.    The FLSA authorizes court actions by private parties to recover damages for violations of the FLSA's wage and hour provisions. Jurisdiction over Plaintiff's FLSA claims are based on 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

4.    Venue in this district is proper pursuant to 28 U.S.C. § 1391(b) and (c) because Plaintiffs Carolyn Love, Kierra Lee and Janeen Acey were employed by Defendants in this district, as well as resided in this district, at all times relevant to this action. Defendants regularly

conducted and continue to conduct business in this district, and have engaged and continue to engage in wrongful conduct alleged herein in this district during all material times in this cause.

### III.    CLASS DESCRIPTIONS

5.    Plaintiffs bring this action on behalf of the following similarly situated persons:

**Class 1 – Off the Clock**

All current and former hourly-paid employees, classified by Defendants as Assistant Managers at their Burger King franchised restaurants and, who were employed by Defendants in the United States at any time during the applicable limitations period covered by this Collective Action Complaint (*i.e.* two years for FLSA violations and, three years for willful FLSA violations) up to and including the date of final judgment in this matter, and who is a Named Plaintiff or elect to opt-in to this action pursuant to the FLSA, 29 U.S.C. § 216(b). (Collectively, "the Off the Clock class").[1]

**Class 2 – Misclassification**

All current and former employees who were paid a salary or fixed amount per week and therefore misclassified as exempt Assistant Managers by Defendants at their Burger King franchised restaurants who were employed by Defendants in the United States who work (or have worked) at such restaurants at any time during the applicable

---

[1] Plaintiffs reserve the right to modify or amend the Off the Clock Class Description upon newly discovered information gathered through the discovery process.

limitation's period covered by this Complaint (*i.e.* two years for FLSA

violations and, three years for willful FLSA violations) up to and

including the date of final judgment in this matter, and who are the

Named Plaintiffs and those who elect to opt-in to this action pursuant

to the FLSA, 29 U.S.C. § 216(b). (Collectively, "the Misclassification class").[2]

## IV. PARTIES

6.  Plaintiff Carolyn Love was a resident of this district and, was employed by Defendants as an hourly-paid and salaried Assistant Manager at one or more of Defendants' Burger King franchised restaurants within this district, during the relevant period herein. (Plaintiff Love's Consent to Join this collective action is attached hereto as Exhibit A.)

7.  Plaintiff Kierra Love was a resident of this district and, was employed by Defendants as an hourly-paid and salaried Assistant Manager at one or more of Defendants' Burger King franchised restaurants within this district, during the relevant period herein. (Plaintiff Lee's Consent to Join this collective action is attached hereto as Exhibit B)

8.  Plaintiff Janeen Acey was a resident of this district and, was employed by Defendants as an hourly-paid and salaried Assistant Manager at one or more of Defendants' Burger King franchised restaurants within this district, during the relevant period herein. (Plaintiff Acey's Consent to Join this collective action is attached hereto as Exhibit C.)

9.  Defendant Garnett Station Partners, LLC is a Delaware limited liability company with its principal executive office located at 8010 Stage Hills Boulevard, Bartlett, Shelby County, Tennessee 38133, and was Plaintiffs' "employer" as that term is defined under the FLSA. In the alternative, Defendant Garnett Station Partners, LLC was Plaintiffs' "joint

---

[2] Plaintiffs reserve the right to modify or amend the Misclassification Class Description upon newly discovered information gathered through the discovery process.

employer" and/or "integrated employer" at all times mentioned herein. Garnett Station Partners, LLC has a portfolio of companies that includes MAACO auto paint and body franchises, Fridababy.[3]  According to the Tennessee Secretary of State, Garnett Station Partners, LLC is not registered to do business in Tennessee. Garnett Station Partners, LLC can be served process through its registered agent: The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, New Castle County, Delaware 19801.

10.    Defendant Cambridge Franchise Holdings, LLC is Delaware limited liability company with its principal executive office located at 8010 Stage Hills Boulevard, Bartlett, Shelby County, Tennessee 38133, and was Plaintiffs' "employer" as that term is defined under the FLSA.  In the alternative, Defendant Cambridge Franchise Holdings, LLC was Plaintiffs' "joint employer" and/or "integrated employer" at all times mentioned herein. Cambridge Franchise Holdings, LLC currently owns and operates 120 Burger King restaurants.[4] Cambridge Franchise Holdings, LLC can be served process through its registered, agent: CT Corporation System, 800 S. Gay Street, Knoxville, Knox County, Tennessee 37929-9710.

11.    Defendant Mirabile Investment Corporation, doing business as MIC, is a Tennessee limited liability company with its principal executive office located at 8010 Stage Hills Boulevard, Bartlett, Shelby County, Tennessee 38133, and was Plaintiffs' "employer" as that term is defined under the FLSA.  In the alternative, Defendant MIC was Plaintiff's "joint employer" and/or "integrated employer" at all times mentioned herein. MIC can be

---

[3] *See http://www.garnettstation.com/overview/*
[4] *See http://www.garnettstation.com/burger-king*

served process through its registered agent: Kevin Whitton, 8010 Stage Hills Boulevard, Bartlett, Shelby County, Tennessee 38133-4032.

12.     Defendant Ray Meeks is a partner along with Defendants Alex Sloane and Matt Perelman in Garnett Station Partners, LLC, as well as the CEO of Garnett Station's Burger King Division.  According to Garnett Station Partners, LLC's website, Defendant Meeks has been a Burger King Franchisee since 1984 and is a member of the New South Coalition Burger King Franchisee Association and the Mid-South Gulf Association. Defendant Meeks was a charter member of both the Virginia and the North Carolina Franchise Associations and served in several capacities in both of those organizations. Additionally, Defendant Meeks has served as Vice Chairman of the National Franchise Association, which represents Burger King Franchisees across the country and Canada and has been the past recipient of several Burger King Awards such as the Franchisee of the Year for the Richmond Area Market, The Burger King Development, Excellence, and Leadership Award, the Burger King National Award of Excellence, and the Burger King National Brand Leadership Award. As the owner of Carolina Quality, LLC, Defendant Meeks operated twenty two (22) Burger Kings in North Carolina, Virginia, Tennessee, Alabama and Mississippi. In 2014, Garnett Station Partners, LLC partnered with Meeks to grow his business. First, Garnett Station Partners, LLC and Meeks implemented what they believe to be the most favorable incentive compensation program in the industry.  As of the filing of this Complaint, Cambridge Franchise Holdings, LLC is among the fastest growing and most profitable Burger King franchisees.[5] Defendant Meeks is an adult individual and believed to be a resident of the State of Tennessee or the State of North

---

[5] *See http://www.garnettstation.com/burger-king; and http://www.garnettstation.com/burgerkingteam/*

Carolina and who, at times relevant to this Collective Action Complaint, has been the CEO of Defendant Cambridge Franchise Holdings, LLC. Upon information and belief, Meeks is also a Principal and/or General Partner of Defendant Garnett Station Partners, LLC, a private equity firm with that wholly owns Cambridge Franchise Holdings, LLC and Mirabile Investment Corporation. Defendant Meeks exercised operational control over significant aspects of the corporate Defendants' day-to-day functions and is therefore individually liable for any violation of the FLSA. Defendant Meeks may be served for purposes of process at 8010 Stage Hills Boulevard, Bartlett, Shelby County, Tennessee 38133.

13.    Defendant Tim Furr has been COO of Cambridge Franchise Holdings, LLC since 2014. According to Garnett Station Partners, LLC's website, prior to his role at Cambridge Franchise Holdings, LLC, Tim Furr was at Burger King Corporate for 10 years serving in several executive capacities, including Director of Franchise Performance for the North East Region of the United States. Defendant Furr is responsible for running the day to day operations of Cambridge Franchise Holdings, LLC's existing restaurants and integrating acquisitions new development. Under his leadership, store-level margins have improved by ~850bps and same store sales have increased +15%.[6] Defendant Furr exercised operational control over significant aspects of the corporate Defendants' day-to-day functions and is therefore individually liable for any violation of the FLSA. Defendant Furr is an adult individual and believed to be a resident of the State of Tennessee. Defendant Furr may be served for purposes of process at 8010 Stage Hills Boulevard, Bartlett, Shelby County, Tennessee 38133.

---

[6]*See http://www.garnettstation.com/burgerkingteam/*

14.   Defendant Joseph Mirabile was the principal of Defendant Mirabile Investment Corporation until 2014 when Garnett Station Partners, LLC acquired MIC and Dr. Mirabile's interest in MIC's Burger King franchises. Mirabile is believed to be a resident of the state of Tennessee. Upon information and belief, Mirabile exercised operational control over significant aspects of some of the Burger King restaurants at issue in this collective action lawsuit and is therefore individually liable for violations of the FLSA that occurred during his tenure.

15.   Defendant Matt Perelman is a Managing Partner and Co-founder of Garnett Station Partners, LLC.  According to Garnett Station Partners, LLC's website, prior to GSP, Perelman worked at L. Catterton Partners, a leading consumer and retail focused private equity firm with $12 billion of capital under management. At L. Catterton, Perelman focused on the restaurant and retail sector, prior experience includes Noodles & Co., First Watch Restaurants, Mendocino Farms Sandwich Market and Protein Bar. Before L. Catterton, Perelman worked in the Investment Banking Division of Citigroup where he executed a number of M&A and Leveraged Finance transactions.[7] Defendant Perelman exercised operational control over significant aspects of the corporate Defendants' day-to-day functions and is therefore individually liable for any violation of the FLSA. Defendant Perelman is an adult individual and believed to be a resident of the District of Columbia.

16.   Defendant Alex Sloane is a Managing Partner and Co-founder of Garnett Station Partners, LLC. According to Garnett Station Partners, LLC's website, prior to GSP, Sloane worked in private equity at Apollo Global Management, where he focused on

---

[7] *See http://www.garnettstation.com/garnettstationpartners/*

transactions in the industrials, business services, gaming and real estate sectors. Prior to Apollo, Sloane worked at Goldman Sachs in the firm's Industrials Investment Banking Group.[8] Defendant Sloane exercised operational control over significant aspects of the corporate Defendants' day-to-day functions and is therefore individually liable for any violation of the FLSA. Defendant Sloane is an adult individual and believed to be a resident of the District of Columbia.

17.  Defendant Chris Schniepp is the VP of Operations at Cambridge Franchise Holdings, LLC. According to Garnett Station Partners, LLC's website, Defendant Schniepp brings several years of QSR experience to Cambridge Franchise Holdings, LLC. Prior to joining Burger King Corporation, Schniepp worked for McDonald's Corporation starting as a Manager Trainee, working his way through Management, Above Restaurant Level (ARL), and Training before moving up to Regional positions that included Field Service Operations and Franchise Manager, over three Regions. During his time with McDonald's Chris was awarded the President's Award and Golden Partner Award.[9] Defendant Schniepp is an adult individual and believed to be a resident of St. Louis, Missouri. Defendant Schniepp, as VP of Operations for Cambridge Franchise Holdings, LLC, exercised operational control over significant aspects of the corporate Defendants' day-to-day functions and is therefore individually liable for any violation of the FLSA.

18.  Defendants constitute an integrated enterprise because their related activities (i.e. jointly owning and operating Burger King franchised restaurants during all time material herein) performed (either through unified operation or common control) by any person or persons

---

[8] *See http://www.garnettstation.com/garnettstationpartners/*
[9] *See http://www.garnettstation.com/burgerkingteam/*

[are] for a common business purpose as that term is defined in the Fair Labor Standards Act, 29 U.S.C §203(r).

## V.    ALLEGATIONS

19.    Defendants own and operate approximately 120 Burger King restaurants. Upon information and belief, Defendants owned and operated Burger King franchised restaurants in several states across the United States, including Tennessee, Mississippi, North Carolina, South Carolina, Virginia, Arkansas, Kentucky and Indiana during all times relevant to this Collective Action Complaint.

20.    The primary function of Defendants' Burger King franchised restaurants is to prepare and sell food and beverage items to its customers.

21.    Defendants are and/or have been the "employer" of the Plaintiffs and those similarly situated within the meaning of 29 U.S.C. § 203(d), during all times relevant to this Collective Action Complaint.

22.    Plaintiffs and all other similarly situated persons are current or former hourly-paid Assistant Managers of Defendants' Burger King franchised restaurants.

23.    Defendants employed Plaintiffs and those similarly situated and was responsible for establishing and administering pay policies and practices, including pay classifications and overtime pay rates, during all times relevant to this Collective Action Complaint.

24.    At all times material, Defendants have had centralized plans, policies and practices (scheme) of establishing and administering pay practices for its employees classified as hourly-paid assistant managers.

25.    Plaintiffs and those similarly situated are or have been "employees" of Defendants as defined by Section 203(e)(1) of the FLSA and, worked for Defendants within the territory

of the Unites States within three (3) years preceding the filing of this lawsuit and, during all times material to this Collective Action Complaint.

26.    Defendants have been an enterprise engaged in commerce or in the production of goods for commerce as defined by Section 203(s)(1) of the FLSA, with annual revenue in excess of $500,000.00 during all times material to this Collective Action Complaint.

27.    At all times material to this action, Defendants have been subject to the pay requirements of the FLSA because they are an enterprise in interstate commerce and their employees are engaged in interstate commerce.

28.    During part of the statutory period, Defendants' Burger King franchised restaurants employed individuals classified as hourly-paid Assistant Managers whose primary duties are non-managerial in nature and whose principal duties are to prepare and serve food items to Defendants' customers.

29.    Defendants have and continue to employ a uniform and centralized electronic time keeping system for tracking and reporting employee hours worked at each of their Burger King franchised restaurants.

30.    During the period of time Plaintiffs and class members have been paid hourly, Defendants have had a centralized plan, policy and practice of inducing, requiring, forcing, encouraging, expecting and, suffering and permitting, Plaintiff's to work in excess of 40 hours per week but editing their compensable time to less than the time they actually worked (within weekly pay periods during all times relevant to this action) in order to stay within the "budgeted labor" cost allotted for each of their Burger King franchised restaurants. Accordingly, Plaintiff's' and Class Members' "edited out" claims are unified by a common theory of Defendants' FLSA statutory violations.

31.    During the period of time Plaintiffs and class members have been paid hourly, Defendants had a centralized plan, policy and practice (scheme), as driven by their executives and Directors of Operations, of strictly enforcing restricted hours of compensable work per day and per week ("budgeted labor") by providing special and favorable recognition to such executives and Directors of Operations to stay within or below such "budgeted labor" on the one hand and, threatening and impacting the job security of such executives and Directors of Operations who failed to stay within such "budgeted labor" on the other hand, even though such budgeted labor was/is inadequate to meet the operational demands and needs of its restaurants which "budgeted labor" policy, in turn caused defendants' executives and Directors of Operations to expect, encourage, entice, condone, induce, permit and/or require Plaintiffs and those similarly situated to perform unpaid "off the clock" work, as described herein. Accordingly, Plaintiffs' and Class Members' "off-the-clock" claims are unified by a common theory of Defendants' FLSA statutory violations.

32.    At all times relevant to this action and, pursuant to Defendants' centralized, unified and uniform "budgeted labor" plans, policies and practices, Defendants have expected, encouraged, induced, condoned, required and, suffered and permitted, Plaintiffs and others similarly situated to perform work "off the clock" without compensating them at the applicable FLSA overtime compensation, including the following "off the clock" compensable time:

(a)  Expecting, encouraging, inducing, condoning, requiring and, suffering and permitting, Plaintiffs and others similarly situated to perform job duties "off the clock" <u>before</u> clocking-in to their scheduled shifts;

(b)  Expecting, encouraging, inducing, condoning, requiring and, suffering and

permitting, Plaintiffs and others similarly situated to perform job duties (including the

processing and submitting of "end-of-day" reports) "off the clock" <u>after</u> clocking-out

of their scheduled shifts;

(c)  Expecting, encouraging, inducing, condoning, requiring and, suffering and

permitting, Plaintiffs and others similarly situated to conduct and receive

job-related training "off the clock";

(d)  Expecting, encouraging, inducing, condoning, requiring and, suffering and

permitting, Plaintiffs and others similarly situated to attend mandatory

meetings "off the clock";

(e)  Expecting, encouraging, inducing, condoning, requiring and, suffering and

permitting, Plaintiffs and others similarly situated <u>to pick up and deliver</u>

restaurant-related food, supplies, bank documents, etc. while "off the clock";

(f)  Expecting, encouraging, inducing, condoning, requiring and, suffering and

permitting, Plaintiffs and others similarly situated to <u>receive and handle</u>

emails, text messages, internet searches and other such communications from and to

management members, employees and customers while "of the clock": and,

(g)  Expecting, encouraging, inducing, condoning, requiring and, suffering and

permitting, Plaintiffs and others similarly situated to perform job duties on their "off

days" while "off the clock."

33.    As a result of such uncompensated "off the clock" work time, Plaintiffs and others

similarly situated are entitled to and, seek to recover, from Defendants any applicable

overtime hours at one and one-half times their regular hourly rate of pay for all hours in

excess of 40 within weekly pay periods during all relevant times to this action, as required by the Fair Labor Standards Act.

34. Defendants' centralized timekeeping records do not reflect the aforementioned "off the clock" hours of Plaintiffs and others similarly situated.

35. As a consequence of Defendants' timekeeping records not reflecting actual hours worked, when the unpaid "off the clock" work time is added to their recorded time, Plaintiffs and other members of the class who have worked in excess of forty (40) hours per week, within weekly pay periods during all times relevant, are entitled to and, hereby seek, a recovery of all such unrecorded overtime work at one and one-half times their regular hourly rate of pay for all hours in excess of forty (40) within said weekly pay periods, as required by the FLSA.

36. The net effect of Defendants' aforementioned plan, policy and practice of editing out Plaintiffs and class members' compensable time and, expecting, encouraging, inducing, condoning, requiring and, suffering and permitting, Plaintiffs and others similarly situated to work "off the clock" without being compensated for such work is that Defendants willfully failed to pay Plaintiffs and other members of the class for all straight time work and premium pay for overtime work in order to save payroll costs and payroll taxes.

37. As a consequence, Defendants have violated the FLSA and, thereby have enjoyed ill-gained profits at the expense of Plaintiffs and others similarly situated.

38. Plaintiffs and others similarly situated are entitled and, hereby seek, to recover back pay, liquidated damages, attorneys' fees, interest, and other cost, fees and expenses from

Defendants for all such unpaid "edited out" and "off the clock" compensable time, that is available under the FLSA.

39.    During the misclassification period, Defendants' Burger King restaurants employed individuals classified as Assistant Managers whose primary duties are non-managerial in nature and whose principal duties are to prepare and serve food items to Defendants' customers.

40.    As an assistant manager, the primary duties of Plaintiffs and similarly situated putative class members were cleaning, taking orders, servicing customers, and preparing, cooking, and packaging food. Plaintiffs and putative class members spent a vast majority of their work-time performing such duties.

41.    During the misclassification period, Defendants directed Plaintiffs and the putative class to work in excess of forty (40) hours per week, and Plaintiffs and the class worked in excess of forty (40) hours per week. Defendants typically scheduled Plaintiffs and the class to work a minimum of fifty (50) hours per week. Plaintiffs regularly and routinely worked approximately 50 to 70 hours per week.

42.    During the misclassification period, Defendants failed to compensate Plaintiffs and the class at a rate of one and one half time their regular rate of pay for all time worked in excess of forty (40) hours in individual work weeks.

43.    Plaintiffs and other similarly situated employees of Defendants classified as salaried Assistant Managers who have not been paid overtime compensation for all hours worked in excess of forty (40) hours per week, during the relevant statutory limitations' period, are entitled to receive all such overtime compensation due to them from Defendants.

44.   The net effect of Defendants' plan, policy and practice of not paying Plaintiffs and other similarly situated employees classified as salaried Assistant Managers overtime compensation for all hours worked in excess of forty (40) hours per week, during the relevant statutory limitations' period, was a scheme to save payroll costs and payroll taxes for which Defendants have enjoyed ill gained profits at the expense of Plaintiffs and other members of the class.

45.   Defendants treated Plaintiffs as exempt employees when it was in Defendants' financial interest to do so by failing to pay Plaintiffs and the putative class time-and-one-half for hours worked over forty (40).

46.   Defendants are unable to bear their burden of showing that Plaintiffs and the class fall within any of the FLSA overtime exemptions, including but not limited to those announced in 29 C.F.R. §§ 541.300, 541.301, 541.302, 541.303, or 541.304.

47.   Although at this stage Plaintiffs are unable to state the exact amount owed to them and other members of the class, they believe such information will become available during the course of discovery. However, when an employer fails to keep complete and accurate time records, employees may establish the hours worked solely by their testimony and the burden of proof of overcoming such testimony shifts to the employer.

## VI.  COLLECTIVE ACTION ALLEGATIONS

48.   Plaintiffs brings this action on behalf of themselves and the class as a collective action pursuant to the FLSA, 29 U.S.C. §§ 206, 207, and 216(b).

49.   The claims under the FLSA may be pursued by those who opt-in to this cause of action under 29 U.S.C. § 216(b).

50.     The members of the classes are so numerous that joinder of all other members of the classes is impracticable. While the exact number of the other members of the classes is unknown to Plaintiffs at this time and, can only be ascertained through applicable discovery, Plaintiffs believe there are at least hundreds of individuals in the classes.

51.     The claims of Plaintiffs are typical of the claims of the classes. Plaintiffs and the other members of the classes work or have worked for Defendants' Burger King franchised restaurants and were subject to the same operational, compensation and timekeeping policies and practices, including not being paid for all their aforementioned "edited out" and "off the clock" compensable time at the applicable FLSA overtime rates of pay and including being misclassified as exempt and not being paid overtime. As a result, Plaintiffs and Class Members' "edited out", "off-the-clock" and misclassification claims are unified by common theories of Defendants' FLSA statutory violations.

52.     Common questions of law and fact exist as to the class which predominate over any questions only affecting other members of the class individually and include, but are not limited to, the following:

- Whether Plaintiffs and other members of the class were expected, encouraged, induced and/or required to perform work without compensation;

- Whether Defendants condoned and/or, suffered and permitted, Plaintiffs and other members of the class to perform work without compensation;

- Whether Defendants failed to pay Plaintiffs and other members of the class all applicable straight time wages for all hours worked;

- Whether Defendants' failed to pay Plaintiffs and other members of the class all overtime compensation due them for all hours worked in excess of forty (40) hours per week within weekly pay period during all times relevant;

- Whether Defendants misclassified Plaintiffs and other members of the class as exempt from overtime compensation;

- Whether Plaintiffs and the class worked over forty hours in a work week without receiving overtime;

- The correct statutes of limitations for the claims of Plaintiffs and other members of the class;

- Whether Plaintiffs and other members of the class are entitled to damages, including but not limited to liquidated damages, and the measure of the damages; and,

- Whether Defendants are liable for interest, attorneys' interest, fees, and costs.

53.    Plaintiffs will fairly and adequately protect the interests of the class as their interests are aligned with those of the other members of the class.  Plaintiffs have no interests adverse to the class and, Plaintiffs have retained competent counsel who are experienced in collective action litigation.

54.    Collective action mechanism is superior to the other available methods for a fair and efficient adjudication of the controversy.  The expenses, costs, and burden of litigation suffered by individual other members of the class in a collective action are relatively small in comparison to the expenses, costs, and burden of litigation of individual actions, making it virtually impossible for other members of the class to individually seek address for the wrongs done to them.

55.    Plaintiffs and other members of the class have suffered and will continue to suffer irreparable damage from the unlawful policies, practices, and procedures implemented by Defendants.

# COUNT I

## FLSA  VIOLATIONS – UNPAID STRAIGHT WAGES

### (On Behalf of the Class)

56.    Plaintiffs on behalf of themselves and the classes, repeat and re-allege Paragraphs 1 thru 55 above, as if they were fully set forth herein.

57.    At all relevant times, Defendants have been and continue to be an employer engaged in interstate commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

58.    At all relevant times, Defendants have employed (and/or continue to employ) Plaintiffs and each of the other members of the classes within the meaning of the FLSA.

59.    At all times relevant and based on the aforementioned allegations, Defendants have had a uniform plan, policy and practice of willfully failing to pay Plaintiffs and other members of the Off the Clock class for all hours worked (including the aforementioned unpaid "edited out" and "off the clock" compensable time), at the applicable FLSA overtime rates of pay.

60.    Defendants' uniform plan, policy and practice of willfully failing to pay Plaintiffs and members of the Off the Clock class one and one-half times their regular hourly rate of pay for all hours in excess of forty (40) within weekly pay periods during all times relevant, have violated the FLSA.

61.    Plaintiffs' and the Off the Clock class members' unpaid "edited out" and "off the clock" claims are unified by common theories of Defendants' FLSA violations.

62.    At all times relevant, Defendants have had actual and/or constructive knowledge of willfully refusing to pay Plaintiffs and other members of the Off the Clock class for all hours worked (including the aforementioned unpaid "edited out time" and "off the clock" compensable time), at least at the applicable FLSA overtime rates of pay.

19

63.   Defendants' conduct constitutes a willful violation of the FLSA within the meaning of 29

U.S.C. § 255(a).

64.   Due to Defendants' willful FLSA violations, Plaintiffs and the other members of the Off

the Clock class are entitled and, hereby seek, to recover from Defendants compensation

for the aforementioned unpaid wages, an additional equal amount as liquidated damages,

as well as interest, reasonable attorneys' fees, costs, and disbursements relating to this

action for the three-year statutory period under the FLSA, 29 U.S.C. § 216(b).

## COUNT II

## FAIR LABOR STANDARDS ACT VIOLATIONS – OVERTIME
### (On Behalf of the Class)

65.   Plaintiffs, on behalf of themselves and other members of the classes, repeat and re-allege

Paragraphs 1 through 64 above as if they were set forth herein.

66.   At all times relevant herein, Defendants have been and continue to be an employer

engaged in interstate commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a)

and 207(a).

67.   At all times relevant herein, Defendants have employed (and/or continue to employ)

Plaintiffs and each of the other members of the classes within the meaning of the FLSA.

68.   At all times relevant herein, Defendants have had a uniform plan, policy and practice of

willfully failing to pay Plaintiffs and other members of the class appropriate overtime

compensation for all of their hours worked, by misclassifying Plaintiffs as exempt and

paying them a salary and including the aforementioned unpaid "edited out time" and "off

the clock" compensable time, in excess of forty hours per week within applicable weekly

pay periods, when Plaintiffs and the class were paid hourly.

69.     During all times relevant, Defendants' uniform plan, policy and practice of willfully failing to pay Plaintiffs and members of the classes at least the required one and one-half times their regular hourly rate of pay for all worked performed (including the aforementioned unpaid "edited out " and "off the clock" compensable time) in excess of forty (40) within applicable weekly pay periods, result in their claims being unified though common theories of FLSA violations.

70.     At all times relevant herein, Defendants have had actual and/or constructive knowledge of willfully refusing to pay Plaintiffs and other members of the classes for all hours worked (including the aforementioned unpaid "edited out time" and "off the clock" compensable time.)

71.     As a result of Defendants' willful failure to compensate Plaintiffs and other members of the classes at a rate of  not less than one and one-half times the regular rate of pay for hours in excess of forty (40), within applicable weekly pay periods, it has violated and (continues to violate) the FLSA, 29 U.S.C. § 255(a).

72.     Due to Defendants' willful FLSA violations, as described above, Plaintiffs and the other members of the classes are entitled and, hereby seek, to recover from Defendants compensation for unpaid overtime wages, an additional equal amount as liquidated damages, as well as interest, reasonable attorneys' fees, costs, and disbursements relating to this action for the three-year statutory period under the FLSA, 29 U.S.C. § 216(b).

## **PRAYER FOR RELIEF**

Whereas, Plaintiffs, individually, and/or on behalf of themselves and all other similarly situated members of the classes, request this Court to grant the following relief against Defendants:

A.   Designation of this cause as a collective action on behalf of the classes and promptly issue notice pursuant to 29 U.S.C. § 216(a), apprising class members of the pendency of this action and permitting other members of the class to assert timely FLSA claims in this action by filing individual Consents under 29 U.S.C. § 216(b);

B.   On Count I, an award of compensation for unpaid wages to Plaintiffs and other members of the Off the Clock class;

C.   On Count II, an award of compensation for unpaid overtime wages to Plaintiffs and the other members of the classes at the applicable FLSA overtime rate of pay.

D.   On Counts I and II an award of liquidated damages to Plaintiffs and other members of the classes;

E.   On Counts I II an award of prejudgment and post-judgment interest at the applicable legal rate to Plaintiffs and other members of the classes;

F.   On Counts I and II an award of costs, expenses, and disbursements relating to this action together with reasonable attorneys' fees and expert fees to Plaintiffs and other members of the classes;

G.   On Counts I and II a ruling that the three-year statutory period for willful violations under the FLSA shall apply in this action, and

H.   Such other general and specific relief as this Court deems just and proper.

## JURY TRIAL DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a **trial by jury** on all issues so triable.

Dated:   August 9, 2017

Respectfully Submitted,

*/s/Gordon E. Jackson*
Gordon E. Jackson* (TN BPR #08323)
James L. Holt, Jr.* (TN BPR #12123)
J. Russ Bryant* (TN BPR #33830)
Paula R. Jackson* (TN BPR #20149)
**JACKSON, SHIELDS, YEISER & HOLT**
Attorneys at Law
262 German Oak Drive
Memphis, Tennessee  38018
Tel:  (901) 754-8001
Fax:  (901) 759-1745
*gjackson@jsyc.com*
*jholt@jsyc.com*
*rbryant@jsyc.com*
*pjackson@jsyc.com*

*Attorneys for Named Plaintiffs, on behalf of*
*herself and all other similarly situated current*
*and former employees*